UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CATHERINE PRESCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-00460-JDL |
| | ) | |
| RUMFORD HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

**POST-TRIAL ORDER**

A trial was held in this case from October 26 to October 29, 2015. At the close of the plaintiff's case, and again at the close of all the evidence, Rumford Hospital moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). ECF No. 116; ECF No. 117. The court reserved its ruling on both oral motions. On October 29, the jury returned a verdict in favor of Catherine Prescott on all counts and awarded her $34,285.00 in back pay and $1,400.00 in compensatory damages. ECF No. 123. The parties have each submitted post-trial briefs, which I address below: first, Rumford Hospital's renewed motion for judgment as a matter of law (ECF No. 137), and second, Prescott's request for post-trial injunctive relief and interest (ECF No. 134).

**I. RUMFORD HOSPITAL'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Rumford Hospital now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). ECF No. 137. For the reasons discussed below, I deny the motion.

### A.    Compensatory Damages

A plaintiff cannot recover compensatory damages under the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551-4634 (2015), or the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101-12213 (2015)  if the defendant employer has fewer than 15 employees, and can only recover compensatory damages under the Rehabilitation Act, 29 U.S.C.A. §§ 701-796l (2015), if the defendant employer receives federal funds.  ECF No. 137 at 3 (citing 5 M.R.S.A. § 4613(2)(B)(8)(e); 42 U.S.C.A. § 1981a(b)(3); 29 U.S.C.A. § 794(a)).  The Hospital asserts that Prescott did not introduce evidence at trial regarding the number of its employees or its receipt of federal funds.  *Id.*  Thus, Rumford Hospital claims that the jury should not have received a compensatory damages instruction.  *Id.* at 2-3.  Alternatively, the Hospital argues that even if the compensatory damages instruction was proper, I should nevertheless vacate the jury's award because Prescott failed to introduce evidence regarding the number of people the Hospital employs and its receipt of federal funds.  *Id.* at 3-4 (citing *Silva v. Worden,* 130 F.3d 26, 30 (1st Cir. 1997) (stating that the Court of Appeals would consider "all evidence offered during trial" in reviewing a directed verdict under Federal Rule of Civil Procedure 50(a))).

Rumford Hospital admitted in paragraphs four and five of its Answer that it receives federal funds for purposes of the Rehabilitation Act and that it has more than 15 employees—in fact, it admitted that it has approximately 250 employees.  ECF No. 6 at 1, ¶¶ 4, 5. The Hospital's argument that Prescott was still required to submit evidence at trial in order to establish these two facts is contrary to federal and Maine law.  In *SEC v. Happ,* 392 F.3d 12, 24 (1st Cir. 2004) (citation and quotation

2

marks omitted), the First Circuit held that "[u]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." Likewise, in *Burr v. Jordan,* 2008 ME 87, ¶ 9, 948 A.2d 582 the Maine Law Court held that "[a]dmissions contained in a party's pleadings are binding on those parties both at trial and on appeal." "[A]nswers are fairly construed as a judicial admission . . . and dispense with the need for further evidence on that issue." *Sport-Obermeyer, Ltd. v. Arsenault,* 447 A.2d 464 (Me. 1982). Thus, Rumford Hospital remains bound by the admissions in its Answer that it employs approximately 250 employees and receives federal funds for purposes of the Rehabilitation Act, ECF No. 6 at 1, ¶¶ 4, 5. There was no need for Prescott to introduce evidence to establish these facts. The Hospital's renewed motion for judgment as a matter of law (ECF No. 137) is therefore **DENIED** with regard to compensatory damages.

**B.    Back Pay Award**

Rumford Hospital argues that the jury's award of back pay should be vacated or reduced because it was based upon "speculative, conjectural evidence." ECF No. 137 at 4.

Prescott bore the initial burden of proving, "to a probability, the existence and extent of her unpaid wages." *Estes v. Pineland Farms, Inc.,* 2012 WL 1977956, at *1 (D. Me. June 1, 2012) (Fair Labor Standards Act ("F.L.S.A.") case). This burden is "a minimal one," *Sec'y of Labor v. DeSisto,* 929 F.2d 789, 792 (1st Cir. 1991) (F.L.S.A. case), and is satisfied with either direct or circumstantial evidence "capable of supporting a just and reasonable inference." *Estes,* 2012 WL 1977956, at *1.

The evidence supporting an award of back pay consisted of Prescott's testimony

3

that (1) she had previously worked at Rumford Hospital as a per diem nurse in the medical-surgical ("med-surg") unit, where she was offered and had accepted shifts; (2) that she had worked, on average, between 24 and 28 hours per week; (3) that she had earned approximately $850 per week; (4) that if she had been permitted by Rumford Hospital to return to the per diem list on January 15, 2013, she would have been willing and able to work 12-hour shifts and would have accepted at least as many hours as she had previously worked as a per diem nurse. ECF No. 140 at 8-9. Furthermore, inpatient nurse manager Joette Carlton testified that Rumford Hospital still maintained a per diem list for the med-surg unit, and former nurse manager Diane York testified that Rumford Hospital had a need for per diem nurses in the med-surg unit.

Rumford Hospital argues that this evidence "failed to establish [Prescott's] back pay damages with any probability" because as a per diem nurse, Prescott was not entitled to any set number of hours and was "competing with other nurses on the list for an indeterminate number of shifts." ECF No. 137 at 6. The Hospital also argues that Prescott admitted that "she did not know how many shifts she would have been able to get[.]" ECF No. 141 at 3.

While not mathematically precise, Prescott's testimony regarding the number of hours she previously worked and the amounts she previously earned was not speculative and did establish facts upon which the jury could reasonably rely to make an "intelligible and probable estimate" of her damages. *Merrill Tr. Co. v. State,* 417 A.2d 435, 441 (Me. 1980). Accordingly, Rumford Hospital's renewed motion for judgment as a matter of law (ECF No. 137) is **DENIED** with regard to Prescott's back

4

pay award.

C.  *Criado* **Instruction**

Rumford Hospital argues that the court erred when it gave the following jury instruction, which was requested by Prescott and was based upon the First Circuit's decision in *Criado v. IBM Corp.,* 145 F.3d 437 (1st Cir. 1998):

> An employer's duty to provide reasonable accommodation may also require an employer to reconsider whether to reinstate an employee if the employee's termination was due to a communication mistake and information actually received by the employer after the termination supports the reasonable accommodation of ongoing employment.

The Hospital asserts that this instruction was improper because, unlike in *Criado,* Prescott's termination was not the result of an error in communication by a third party. ECF No. 137 at 7-8. The Hospital also claims that there was no evidence at trial of a communication mistake that would have made a difference in the decision to terminate Prescott. *Id.* at 8-9.

In *Criado,* the plaintiff took a one-month disability leave from her job. *Criado,* 145 F.3d at 440. At the end of the one-month leave period, the plaintiff's doctor concluded that she was not well enough to return to work and faxed evaluations to the plaintiff's employer stating that she required additional leave. *Id.* The employer claimed not to have received the doctor's fax, and the plaintiff was terminated when she did not return to work at the end of the one-month leave period. *Id.* The employer refused to reconsider the plaintiff's termination even after receiving the doctor's letter explaining her medical condition and requesting reconsideration. *Id.* The plaintiff sued for failure to accommodate, and at the conclusion of the trial, the jury returned a verdict in the plaintiff's favor, awarding back pay, front pay, and compensatory and

5

punitive damages. *Id.* The First Circuit upheld the jury's verdict, finding that if the plaintiff's termination was the result of a communication mistake, the plaintiff should have been reinstated once her physician explained her condition and need for further leave. *Id.* at 444.

Prescott's case is not perfectly analogous to *Criado*, but it is sufficiently similar such that the instruction concerning a communication mistake was appropriate. Prescott testified at trial that she called and left a voicemail message for Cheryl Smith in late November 2012, stating that her doctor had told her she would likely be cleared to return to work at her next doctor's visit. Smith testified that she did not recall receiving Prescott's message, nor informing Patricia Bickford of such a message when they met in December 2012 to discuss Prescott's termination. On December 11, 2012, Prescott received a termination letter from Bickford. Thus, in this case, as in *Criado*, the plaintiff was terminated when a communication concerning medical leave did not reach her employer.

Rumford Hospital objects that Prescott's communication was simply one in a long line of emails and telephone calls in which Prescott stated that she would soon be released to return to work, only to state subsequently that she needed more leave. However, this argument goes to the evaluation of the meaning of Prescott's various communications with the Hospital, her credibility, and whether her November communication regarding her anticipated return to work was believable—questions that were for the jury to determine. Accordingly, Rumford Hospital's renewed motion for judgment as a matter of law (ECF No. 137) is **DENIED** with regard to the *Criado* instruction.

6

## II. POST-TRIAL INJUNCTIVE RELIEF SOUGHT BY PRESCOTT

Prescott seeks post-trial injunctive relief from Rumford Hospital in the form of reinstatement, pre- and post-judgment interest, and mandatory training of Rumford Hospital personnel regarding the ADA and the MHRA. Her requested relief and Rumford Hospital's objections are discussed below.

### A. Reinstatement

Prescott is ordered reinstated. "[I]n employment discrimination cases, the overarching preference is for reinstatement." *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 43 (1st Cir. 2003) (quoting *Selgas v. Am. Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir. 1997)) (quotation marks omitted). "This preference and the reasoning behind it apply by extension to equitable remedies under the MHRA." *Webber v. Int'l Paper Co.,* 307 F. Supp. 2d 119, 128 (D. Me. 2004).

Rumford Hospital argues vociferously that reinstatement would be inappropriate because of what it describes as "Prescott's extraordinary attacks on her fellow nurses and managers . . . and her desire for revenge[.]" ECF No. 135 at 4. This sharp characterization of Prescott's behavior and motives was plainly rejected by the jury. To the extent that hostility still exists between Prescott and the Hospital's staff, the First Circuit has made it clear that hostility resulting from reinstatement is not enough to justify a denial of reinstatement, absent special circumstances, which Rumford Hospital has not alleged and which I do not find. *Che*, 342 F.3d at 43 ("The reason we have adopted such a rule is because the goals of Title VII would be ill served if we permitted such routine antagonism to be an adequate ground for denying reinstatement.").

The Hospital also argues against reinstatement by accusing Prescott of having "lied for personal gain" and suggesting that she may pose a threat to patient safety. ECF No. 135 at 6-7 ("Patients' lives depend on nurses being honest about everything . . . Prescott is not worthy of such trust."). As an example of such alleged deceit, the Hospital claims that Prescott informed Priscilla Bickford and Cheryl Smith in a December 24, 2012, email that she was cleared to return to work "100%," but did not tell the same to her long-term disability insurer, The Hartford. *Id.* (quoting Prescott's trial testimony). The implication is that Prescott was cleared to return to work in December 2012 but lied to The Hartford so that she would continue to receive disability insurance payments. *See id.* The Hospital also claims that although Prescott was fully cleared to return to work as of January 15, 2013, she admitted on cross-examination that she called The Hartford in March 2013 to inquire whether she could continue to receive long-term disability payments. *Id.* at 7. The Hospital thus contends that Prescott hoped to continue receiving disability insurance payments long after she was released to return to work. *See id.*

Upon closer inspection, neither of these allegations is particularly credible, and neither constitutes a basis for denying reinstatement. First, in her December 24 email to Bickford and Smith, Prescott did not state that she was "100%" ready to return to work in December. Rather, her email states that she "will have [her] work release papers Jan[.] 15th[,]" and that she "would be cleared to work mid Jan[.]" Plaintiff's Ex. 4. Thus, I conclude that Prescott was not cleared to return to work "100%" in December 2012; she did not claim to be cleared for work in December 2012; and there was no reason for Prescott to notify The Hartford of any change.

8

Secondly, although Prescott admitted to calling The Hartford in March 2013 to inquire about additional disability payments, she also testified that the reason she called was because her payments from The Hartford continued even after she was cleared to return to work, and she was concerned that she would be required to pay back these benefits, and that she therefore called The Hartford in March 2013 to inquire about whether the benefits would continue to be disbursed.  It was reasonable for the jury to believe Prescott's testimony, and it need not have reached the worst-case-scenario conclusion that Rumford Hospital favors.

Additionally, Rumford Hospital asserts that reinstatement is improper because Prescott was a bad employee and a poor nurse "who would curl up in a chair at the nurses' station with a blanket and ignore the bells from patients seeking assistance and care" and who "ignored a non-responsive patient [and] delayed a patient's lab for no reason causing him to need emergency care."  ECF No. 135 at 5.[1]  However, the trial evidence reflects that no formal decision was taken, nor any determination made by the Hospital that Prescott jeopardized patients in her care.

Finally, Rumford Hospital argues that Prescott's conduct during and since trial are grounds for denying reinstatement.  ECF No. 135 at 9-10.  I find no merit in the arguments advanced by the Hospital, and do not address them further.

---

[1] Rumford Hospital provides no record citations to support these acts of malfeasance it contends that Prescott committed.  *See* ECF No. 135 at 5.

### B.     Pre-Judgment and Post-Judgment Interest

Rumford Hospital is liable for pre-judgment interest, which accrues from April 8, 2013—the time the notice of claim was served upon the Hospital—until October 30, 2015—the date on which an order of judgment (ECF No. 129) was entered. *See* 14 M.R.S.A. § 1602-B(5) (2015).

Rumford Hospital asserts in its post-trial brief that "[n]o notice of claim was served on the Hospital by plaintiff personally or by registered or certified mail on April 8, 2013." ECF No. 135 at 13. It also maintains that Prescott "has provided no evidence of any other notice being filed by registered or certified mail on any other date either." *Id.* However, in a colloquy with the court during trial, the Hospital stipulated that it was notified of Prescott's complaint to the Maine Human Rights Commission on April 8, 2013, and unequivocally denied that there was any factual dispute about the matter. It cannot now claim that it did not receive notice on April 8, 2013.

Rumford Hospital is also liable for post-judgment interest pursuant to 14 M.R.S.A. § 1602-C (2015).

### C.     Remedial Training

The jury's award of back pay and compensatory damages, combined with Prescott's reinstatement, are sufficient to deter future violations by Rumford Hospital. Therefore, Prescott's request for an order requiring the Hospital to engage in a program of remedial disability rights training, ECF No. 134 at 4-7, is **DENIED**.

## III. CONCLUSION

**A.** Rumford Hospital's renewed motion for judgment as a matter of law (ECF No. 137) is **DENIED.**

**B.** Prescott's request for reinstatement (ECF No. 134) is **GRANTED.**

**C.** Prescott's request for pre-judgment interest (ECF No. 134), beginning as of April 8, 2013, is **GRANTED.**

**D.** Prescott's request for post-judgment interest (ECF No. 134) is **GRANTED.**

**E.** Prescott's request for an order requiring Rumford Hospital to conduct remedial disability rights training (ECF No. 134) is **DENIED.**

**SO ORDERED.**

**Dated this 24th day of February, 2016**

                                                **/s/ Jon D. Levy**
                                             **U.S. DISTRICT JUDGE**